**Jalee HYNSON, et al.**

v.

**CITY OF CHESTER, Captain Joseph Lastowka and Officer Daniel Elder.**

**Civ. A. No. 86–2913.**

United States District Court, E.D. Pennsylvania.

March 8, 1990.

A. Terry Daly, Philadelphia, Pa., for plaintiffs.

Joseph Goldberg and Kurt Denke, Margolis, Edelstein, Scherlis, Sarowitz and Kraemer, Philadelphia, Pa., for defendants.

## MEMORANDUM

KATZ, District Judge.

This is a civil rights action brought pursuant to 42 U.S.C. § 1983. For the reasons set forth below, the motion of defendants City of Chester, Captain Lastowka and Officer Elder for summary judgment will be granted in part and denied in part.

## BACKGROUND

On October 15, 1984, Alesia Hynson was murdered by Jamil Gandy, her former boyfriend, and the father of one of her children. The murder took place the day after the Chester police were called to Ms. Hynson's home to investigate an incident involving Mr. Gandy. Although Ms. Hynson had applied for and received protection from abuse orders on earlier occasions, the most recent order had expired on Friday, October 11, 1984. On that day, a hearing was held and a new order was approved, although the order was not signed until October 16, 1984.

The incident on October 14, 1984 took place while Ms. Hynson, together with her sister and cousin, were out at an "after-hours" club in Chester. Ms. Hynson's chil-

dren were left in the care of a babysitter. While the women were at the club, Mr. Gandy threatened Ms. Hynson. He later visited Ms. Hynson's Chester residence and broke a window in an attempt to gain entrance. The babysitter called the police, but they did not respond; apparently due to an incorrect address. When the women returned home and heard of Mr. Gandy's attempted entry, Ms. Hynson's sister, Deanna Williams, called the police.

Defendants Captain Lastowka and Officer Elder, together with Sergeant Chess (no longer a defendant), responded to the call. The women informed the responding officers of the events that had taken place that evening. It is unclear, however, exactly how much the police officers knew or were told about Ms. Hynson's prior problems with Mr. Gandy and the earlier protection from abuse orders. When Ms. Hynson was unable to produce a valid order, Officer Elder radioed the Chester Police to verify that there were no outstanding warrants for Mr. Gandy's arrest and that no protection from abuse order existed. What happened next is disputed. The police officers maintain that upon learning that no valid protection from abuse order existed, they then asked Ms. Hynson to sign a criminal complaint and to accompany them in a search for Mr. Gandy. Both requests, the defendants claim, were refused. The plaintiffs contend that the women described Mr. Gandy to the police and told them where he could be located, but that the police officers never offered either to allow Ms. Hynson to accompany them or to have her sign a criminal complaint. The police remained at the scene until Ms. Hynson left for her mother's house.

Plaintiffs in this case, Ms. Hynson's mother and children, initially brought this action for money damages pursuant to 42 U.S.C. § 1983 against numerous defendants. Of these, only defendants City of Chester, Captain Lastowka and Officer Elder remain. By memorandum and order dated April 19, 1988, I granted summary judgment in favor of the individual police officers on plaintiffs' due process claim and in favor of the City of Chester on plaintiffs' pendent state law claims. I denied defendants' motion for summary judgment with respect to plaintiffs' due process claim against the City of Chester, plaintiffs' equal protection claim against all defendants, and plaintiffs' pendent state claims as to the individual defendants.

The individual police officers appealed that part of my order denying them summary judgment. The Court of Appeals for the Third Circuit remanded the qualified immunity issue as to Lastowka and Elder on the equal protection claim. *Hynson v. City of Chester*, 864 F.2d 1026 (3d Cir. 1988). On remand, I permitted the plaintiffs to amend their complaint and allowed the parties to engage in further discovery.

The pending motion seeks summary judgment on the remaining due process claim against the City of Chester, the equal protection claims against all defendants, and the pendent state law claims against the individual officers.[1]

## DISCUSSION

### A. *Due Process*

In the nearly two years since my memorandum and order of April 19, 1988, there have been significant developments in the law of due process in the context of deprivations of rights by private third parties. In *DeShaney v. Winnebago County Department of Social Services*, — U.S. —, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), the Supreme Court rejected the argument that in certain circumstances a "special relationship" arises between an individual and the state when the state promises to provide protection from known dangers. Prior to *DeShaney*, the "special relationship" doctrine was accepted law in the Third Circuit. *See Estate of Bailey By Oare v. County of York*, 768 F.2d 503 (3d Cir.1985).

---

**1.** The Fourth Amended Complaint also alleges that the conduct of the defendants denied plaintiff Jeffrie Hynson, the decedent's mother, the "right to parenthood under the Ninth Amend-

ment." I will not discuss the viability of this claim because the defendants have chosen not to include it in their current motion.

*DeShaney* involved the failure of the Winnebago County Department of Social Services to adequately protect the safety of Joshua DeShaney. Despite an ongoing history of child abuse and active involvement of a caseworker, the Department did not remove the child from the custody of his father. Joshua's father beat him so severely that the cumulative effect was permanent brain damage.

In *DeShaney*, the Court limited the responsibility of the state to protect individuals from private violence to those situations in which an individual is in the custody of the state and is therefore unable to act on his own behalf. As the Court stated:

> The rationale for this principle is simple enough: When the State, by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—*e.g.*, food, clothing, shelter, medical care, and reasonable safety—it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause.

*Id.* 109 S.Ct. at 1005–06 (citing *Estelle v. Gamble*, 429 U.S. 97, 103–04, 97 S.Ct. 285, 290–91, 50 L.Ed.2d 251 (1976); *Youngberg v. Romero*, 457 U.S. 307, 315–16, 102 S.Ct. 2452, 2457–58, 73 L.Ed.2d 28 (1982)).

■ Two basic facts require me to apply *DeShaney* in this case. First, Ms. Hynson was not in custody or in any other way restrained by the state at the time of her death.[2] Second, the murder was an act of private violence. Consequently, plaintiffs cannot recover in this action for denial of due process because no duty existed to protect Ms. Hynson from the violent acts of Mr. Gandy, a private actor.[3]

■ In an effort to save this claim from the fate dictated by *DeShaney*, plaintiffs have advanced a second theory relating to the denial of due process. Citing *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), plaintiffs now claim that Ms. Hynson possessed an entitlement to police protection based on Pennsylvania's Protection From Abuse Act, Pa. Stat.Ann., tit. 35 § 10181 *et seq.* (Purdon 1988 Supp.). *Roth* stands for the proposition that the requirements of due process are not implicated unless an individual possesses a property interest. As Justice Stewart described them, "[p]roperty interests are not created by the Constitution. Rather, they are created and their dimensions defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Roth*, 408 U.S. at 577, 92 S.Ct. at 2709. An example of an entitlement created by statutory terms is the interest in receiving welfare payments.

Plaintiffs argue that Ms. Hynson's most recent temporary protection from abuse order and the hearing on October 11, 1984 "provided the basis for her understanding" that she would have the benefit of police protection. Plaintiffs' Memorandum at 7. Ms. Hynson's subjective impressions, however, are irrelevant here.[4] What is rele-

---

**2.** I note the recent decision of the Third Circuit in *Horton v. Flenory*, 889 F.2d 454 (3d Cir.1989). There, the Court denied an appeal of a motion denying judgment n.o.v. in a case holding police officials liable where they had handed the victim over to private actors pursuant to an official policy. The private actors then beat the victim to death. While this represents a somewhat expanded notion of the custody concept outlined in *DeShaney*, the facts of this case do not warrant a different outcome because of it.

**3.** Plaintiffs have reasserted their due process claim against the individual defendants in their Fourth Amended Complaint. *See* ¶ 65. I suspect that this is an oversight on their part as the qualified immunity of the individual defendants

on the due process issue was not before the Third Circuit on appeal. Moreover, neither party has briefed the issue here. In any event, I adhere to my earlier analysis for the reasons stated therein. *See Hynson v. City of Chester*, 1988 WL 36386, 1988 U.S.Dist. LEXIS 3358 (E.D.Pa. April 19, 1988), *vacated in part and remanded in part*, 864 F.2d 1026 (3d Cir.1988). It is also clear that the *Deshaney* decision applies to the claim against the individual defendants, thereby providing an independent ground for summary judgment.

**4.** This reference to Ms. Hynson's state of mind seems to suggest that an entitlement to police protection grew out of certain promises made to her with regard to the scope of protection under

vant is whether the Protection From Abuse Act provides the right to police protection.

Pennsylvania's Protection From Abuse Act creates a comprehensive scheme to aid the victims of domestic violence. The relief available under the Act includes: (1) ordering a defendant to refrain from further abuse; (2) granting sole possession of a household or residence to a plaintiff; (3) awarding temporary custody of minor children; (4) following a hearing, an order directing a defendant to provide financial support; (5) prohibiting a defendant from any contact with a plaintiff; (6) ordering a defendant to relinquish all weapons to the sheriff; and (7) ordering a defendant to pay for losses attributable to abuse including attorney fees. *See* Protection From Abuse Act, Pa.Stat.Ann., tit. 35 § 10186. Under the Act as written in 1984, copies of all orders were filed with the appropriate police department, *see* § 10187. With regard to police procedure in connection with a violation of an order, § 10190(c) provides as follows:

> An arrest for violation of an order issued pursuant to this act may be without warrant upon probable cause whether or not the violation is committed in the presence of the police officer. The police officer may verify, if necessary, the existence of a protection order by telephone or radio communication with the appropriate police department.

Thus, the statute modifies police procedure in that it authorizes a warrantless arrest in appropriate circumstances. Assuming, without deciding, that Hynson was the beneficiary of a valid order, the protection provided by such a valid order does not encompass the right to the type of police protection suggested by plaintiffs. There is simply nothing in the Protection From Abuse Act that entitles the named individual to the immediate arrest of a person who is claimed to be in violation of a valid order. Nor does the Act require police to perform a certain type of investigation. The decisions concerning mode of investigation and

whether to arrest a suspect are left to the discretion of the police.

Given this broad discretion to formulate the appropriate response to a violation of an order, there can be no property interest for purposes of the protection of the due process clause in this case. Consequently, plaintiffs' alternative theory cannot support a claim for denial of due process in this case.

## B. *Equal Protection*

■ Plaintiffs' equal protection claim is based on the alleged discriminatory impact of a policy of the Chester Police Department to treat incidents of domestic violence less seriously than nondomestic violence. The claimed discrimination occurs because the class of domestic violence victims in Chester are predominantly women. Thus, as a result of the policy, plaintiffs maintain that women receive a lower level of police protection.

The analysis of plaintiffs' equal protection claim is controlled by the standard set forth by the Third Circuit in *Hynson:*

> In order to survive summary judgment, a plaintiff must proffer sufficient evidence that would allow a reasonable jury to infer that it is the policy or custom of the police to provide less protection to victims of domestic violence than to other victims of violence, that discrimination against women was a motivating factor, and that the plaintiff was injured by the policy or custom.

864 F.2d at 1031 (footnote omitted).

Plaintiffs have proffered an expert's analysis of the characteristics of victims of violence and the subsequent police response in Chester for the period of July 1983 through December 1984. Central to the report are statistics demonstrating a lower level of police response to female victims of domestic violence. While the issue is not free from difficulty, I am satisfied that the evidence in this case passes muster under the *Hynson* standard. Defendants argue that statistical evidence of

---

the order and the procedure surrounding its issuance. Such an argument, however, is simply an attempt to recast the "special relation-

ship" theory in terms of entitlement. Whether or not an entitlement existed depends solely on the statute.

the kind in the report of plaintiffs' expert is by itself insufficient to withstand summary judgment. *Hynson* does not so hold, nor have defendants cited any controlling Supreme Court authority that does. The statistical evidence, in the context of this case, provides a basis for a reasonable jury to make the inferences required by *Hynson.*

■ The individual officers, however, possess a qualified immunity to plaintiffs' equal protection claim. Under *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) and *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987), the particularized right at issue here did not become clearly established until the Third Circuit's decision in *Hynson.* As the Third Circuit stated quite plainly: "[w]e realize that perhaps for the first time in a published opinion we have articulated a standard for the district courts in this circuit to follow in the § 1983 cases arising from domestic violence situations." 864 F.2d at 1032. Under these circumstances, summary judgment in favor of the individual officers on qualified immunity grounds is appropriate.

## C. *Pendent State Law Claims*

■ The entry of summary judgment in favor of Lastowka and Elder on plaintiffs' federal claims means that there is no longer a basis for the exercise of federal jurisdiction over the remaining state law claims against them. Although a viable federal claim remains against the City of Chester, the use of pendent party jurisdiction to require Lastowka and Elder to defend the state law claims in this court is not permitted in a § 1983 action. *See Aldinger v. Howard,* 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976). Consequently, the state law claims must be dismissed.

An Order follows.

## ORDER

AND NOW, this 8th day of March, 1990, upon consideration of defendants' Motion for Summary Judgment and the response of plaintiffs, and in accordance with the foregoing Memorandum, it is hereby ORDERED as follows:

1. Summary Judgment is GRANTED in favor of defendant City of Chester on plaintiffs' due process claim.

2. Summary Judgment is GRANTED in favor defendants Lastowka and Elder on plaintiffs' equal protection claim.

3. Summary Judgment is DENIED with respect to the equal protection claim against the City of Chester.

4. Plaintiffs' pendent state law claims against Lastowka and Elder are DISMISSED without prejudice.

5. This case shall be specially listed for trial commencing May 7, 1990.

6. After weighing the considerations of convenience, avoiding prejudice, expedition and judicial economy in the trial of the case captioned above, the court finds that this trial should be bifurcated. The issue of liability shall be tried first, with trial of the issue of damages to follow if liability is found.

7. The plaintiff's pretrial memorandum under Local Rule 21(c) shall be filed by April 6, 1990. The plaintiff shall file one copy of record and deliver two courtesy copies to chambers.

8. The defendant's pretrial memorandum under Local Rule 21(c) shall be filed by April 20, 1990. The defendant shall file one copy of record and deliver two courtesy copies to chambers.

9. The parties shall file one copy of record and submit two courtesy copies of trial briefs covering legal issues likely to arise at trial. Trial briefs shall be filed with the respective pretrial memoranda.

10. The parties shall file one copy of record and submit three courtesy copies of proposed, numbered points for charge, including authorities with precise, pinpoint page citations. The parties shall file these papers with their respective pretrial memoranda. In addition, counsel shall submit a jointly prepared set of jury questions. To the extent counsel cannot agree as to content, counsel shall submit alternative drafts. The submission shall not be a waiver of contentions that there is insufficient evidence to submit such issues to the

jury. In drafting the jury questions, counsel are to bear in mind that the key is simplicity in wording and organization so that the final draft contains the fewest number of questions necessary for a verdict. The parties shall file one copy of record and two courtesy copies of the jointly prepared set of jury questions by April 20, 1990.

11. The parties shall meet to prepare a complete and comprehensive stipulation of uncontested facts in accordance with the procedure set forth in Local Rule of Civil Procedure 21(d)(2)(b)(2). The parties shall file one copy of record and submit three courtesy copies of the jointly prepared stipulation of uncontested facts by April 20, 1990.

12. All trial exhibits shall be marked and exchanged by April 20, 1990.

13. The following should guide counsel at trial:

a) Counsel are expected to select a jury promptly without arguing the case to the panel.

b) In general, the court discourages side bar conferences because they are usually unnecessary. If counsel feel that a side bar is absolutely necessary, they shall state the side bar general purpose so that the court may decide whether one is in fact necessary.

c) It is not necessary to ask permission to approach a witness.

d) Counsel are expected to have their witnesses available, either in the courtroom or in the witness room located outside the courtroom. Please instruct your witnesses to speak slowly, distinctly and loud enough for all to hear. Examinations should be limited to direct, cross and re-direct unless there are exeptional circumstances.

e) Counsel should use the podium for opening and closing statements.

f) Counsel should move all exhibits in a clear voice, identifying each by name and/or number. If there is no objection, exhibits are automatically admitted.

g) Counsel are expected to prepare written resumes of expert witnesses.

h) Counsel are expected to edit trial depositions to remove superfluous material.

i) Counsel shall submit Rule 50 motions in writing.

j) At the close of trial, exhibits are released to the custody of the party who offered them and should be picked up within 24 hours.