Terry L. COFFMAN

v.

**WILSON POLICE DEPARTMENT, Borough of Wilson, Richard D. Nace, and Meridian Bancorp.**

**Civ. A. No. 90–1479.**

United States District Court, E.D. Pennsylvania.

June 4, 1990.

**259**

MEMORANDUM

CAHN, District Judge.

The plaintiff has sued the defendants for the violation of various federal and state constitutional, statutory, and common-law duties, the violation of which stems from long-running spousal abuse which culminated in a shooting. Defendants Wilson Police Department ("Department"), Borough of Wilson ("Wilson"), and Richard D. Nace, the Chief of Police of the Borough of Wilson, have moved to dismiss the complaint.[1] For the reasons stated below, their motion shall be denied; however, on its own motion, this court will dismiss defendant Meridian Bancorp from this action on the ground that it lacks subject matter jurisdiction.

## I. BACKGROUND

The allegations are as follows. Terry L. Coffman, a Pennsylvania resident, was often physically and mentally abused by her husband, Wayne P. Barber.[2] Complaint, ¶¶ 1, 7–10. As a result, on June 9, 1988, she filed a petition for a temporary protective order pursuant to the Pennsylvania Protection From Abuse Act, 35 Pa.Stat. Ann. §§ 10181–10190 (Purdon 1977 & Supp. 1989); she was granted the order that day. Complaint, ¶ 11 & Exh. A & B. The order was served upon Barber and the Department on June 14, 1988. Complaint, ¶ 12. The injunction was extended on June 15, 1988, and made final on June 24, 1988. Complaint, ¶¶ 14–15 & Exh. C & D. The final order was served upon Barber and the Department on or after June 24, 1988. Complaint, ¶ 16. Both the temporary orders and the final order barred Barber from Coffman's home and ordered Barber not to cause Coffman bodily injury. Complaint, Exh. B & D. They also stated that the appropriate police department "shall enforce this order." *Id.*

On August 3, 1988, Barber broke into the plaintiff's apartment, restrained her,

Martricia McLaughlin, Robert Glazer, McLaughlin & Glazer, Easton, Pa., for plaintiff.

Robert G. Hanna, Jr., Philadelphia, Pa., for defendants.

1. To distinguish them from Meridian Bancorp, the other defendant, these shall be known collectively as the "governmental defendants."

2. During the events here, Ms. Coffman was known as Terry Barber, the name that appears on the documents appended to the complaint. For simplicity's sake, though, she will be referred to as Coffman in this opinion.

threatened her, and committed other unpleasant acts. Complaint, ¶ 17. The plaintiff reported this attack to Richard Nace, the Chief of Police of the Borough of Wilson, roughly two weeks later; he told her that she had waited too long for him to act against Barber. Complaint, ¶ 18. Coffman believes that Nace took no further action. *Id.*[3]

Starting immediately after the attack, Barber, who had a history of psychiatric difficulties known to the Wilson police, telephoned the plaintiff at least once each day. Complaint, ¶ 19. Complaint, ¶¶ 12–13 & Exh. G. He threatened to appear if she hung up the receiver. *Id.* The plaintiff often reported these calls to the Department. *Id.* When telephone calls arrived while Wilson Police Department officers were at the plaintiff's home, the officers stated that they would try to find and arrest Barber; however, they also told her that, though they would call the Easton Police Department, which had jurisdiction over Barber's residence, the Easton force was shorthanded and might not act. Complaint, ¶ 20. On September 6, 1988, the plaintiff was warned that Barber was heading toward her home. Complaint, ¶ 21. She telephoned the Department immediately, but was not telephoned back for thirty minutes. *Id.* Although she was then told that the Department would investigate, she believes that the Department did nothing. *Id.*

The plaintiff filed a contempt petition for violation of the protective order on September 6, 1988. Complaint, ¶ 22 & Exh. E. The petition was granted; an order was entered on September 9, 1988 at 10:05 A.M. Complaint, ¶ 22 & Exh. F. At 11:15 A.M. that day, the plaintiff's attorney telephoned the Department to tell them that the order had been entered and to secure its enforcement. Complaint, ¶ 23. She was told that no one was in, but that she could deliver the order to the police headquarters. *Id.* She did so at 3:15 P.M. Complaint, ¶ 24 & Exh. G.

At 4:00 P.M., the plaintiff went to a Meridian Bank office in Palmer Township. Complaint, ¶ 25. As she left, she saw Barber coming toward her. *Id.* Barber assaulted her; in their struggle, she managed to pull him into the bank building. Complaint, ¶ 26. Although she asked for help, to her knowledge no one in the bank offered any or telephoned the police. *Id.* Some few minutes later, Barber shot Coffman in the chin and throat. Complaint, ¶ 27. She suffered permanent harm, both physical and psychological; indeed, she still cannot engage in her earlier employment, or function as she had in everyday life. Complaint, ¶¶ 28–31. From the time of the first protective order to the shooting, the Wilson Police Department never arrested or restrained Barber. Complaint, ¶ 32.

Count I of Coffman's complaint invokes the Equal Protection Clause of the United States Constitution and 42 U.S.C. § 1983. It asserts that, by creating a policy of failing to respond properly to complaints by women of spousal assault or abuse, the governmental defendants have violated the plaintiff's civil rights. Complaint, ¶¶ 33–36. Count II charges that the governmental defendants failed to train their officers properly as to how they should respond to complaints by women of spousal abuse or assault, and that the policy is motivated by bias against women. This is also brought under the Equal Protection Clause and § 1983. Complaint, ¶¶ 37–40. Count III states that the governmental defendants, by failing to arrest or restrain Barber, deprived Coffman of her entitlement to police protection under the Protection From Abuse Act and therefore violated her rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution (invoked through § 1983). Complaint, ¶¶ 41–42. Count IV asserts that the governmental defendants violated her rights, as secured by various sections of the Constitution of the Commonwealth of Pennsylvania. Complaint,

---

**3.** The police force did take one further action: when investigating a complaint by Coffman, Wilson police officers told her that she could be arrested for contempt of the protective order because she failed to report this attack immediately. Complaint, ¶ 20. This threat is unsupported by the order or the statute.

¶¶ 43–44. Count V seeks attorney's fees from the governmental defendants pursuant to 42 U.S.C. § 1988. Complaint, ¶¶ 45–46.

Counts VI and VII proceed against Meridian Bancorp ("Meridian"). Count VI states that Meridian breached its duty to provide appropriate safety measures (or, alternatively, to warn in case of their absence) to protect Coffman, a business invitee. Complaint, ¶¶ 47–52. Count VII states that, by failing to provide Coffman with assistance, Meridian negligently breached its duty to aid Coffman, a duty stemming from Meridian's holding its premises open for business purposes. Complaint, ¶¶ 53–57. Jurisdiction rests upon 28 U.S.C. § 1343 for the federal claims, with the state law claims pendent. The governmental defendants have moved to dismiss all counts of the complaint.

## II. DISCUSSION

Under Fed.R.Civ.P. 12(b)(6), "[t]he applicable standard of review requires the court to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." *Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3d Cir. 1989). The question before the court is not whether the plaintiff will ultimately prevail; rather, it is whether the plaintiff could prove any set of facts in support of his claim that would entitle the plaintiff to relief. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984); *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). In cases brought under 42 U.S.C. § 1983, the pleading requirements are somewhat stricter than usual. The Court of Appeals " 'has consistently demanded that a civil rights complaint contain a modicum of factual specificity, identifying the particular con-

duct of defendants that is alleged to have harmed the plaintiffs.' " *Colburn v. Upper Darby Township*, 838 F.2d 663, 666 (3d Cir.1988) (quoting *Ross v. Meagan*, 638 F.2d 646, 650 (3d Cir.1981) (per curiam)), *cert. denied,* —— U.S. ——, 109 S.Ct. 1338, 103 L.Ed.2d 808 (1989). To meet this requirement, the complaint need only avoid frivolity and provide the defendants enough notice to frame an answer. *Freedman v. City of Allentown*, 853 F.2d 1111, 1114 (3d Cir.1988). The basic Rule 12(b)(6) standard is unchanged. *Bartholomew v. Fischl*, 782 F.2d 1148, 1152 (3d Cir.1986).[4]

### A. *Count I*

The governmental defendants attack Count I on several grounds. First, they maintain that allegations, here and elsewhere, against both the Borough of Wilson and the Wilson Police Department are redundant, because the Department is an administrative part of the Borough. Thus, they argue that the Department should be dismissed from this action. Second, they argue that, if the claim against Nace rests against actions taken in his official capacity, it merges with the claim against Wilson; hence, Wilson should also be dismissed. If, on the other hand, the claim against Nace rests on actions taken in his individual capacity, the complaint should be dismissed because of a lack of factual specificity. Third, the governmental defendants argue that, because the shooting occurred outside of Wilson and because the Department was not notified of the emergency that culminated in the shooting, the governmental defendants cannot be held liable.

The first objection, though possibly correct, is misplaced. Suing both the police department and the borough itself may be redundant. However, a Rule 12(b)(6) motion does not address the redundancy of claims; it questions only their validity. Redundant claims may all be val-

---

**4.** As a threshold matter, the governmental defendants object to the complaint's statement that Coffman's rights secured by 42 U.S.C. § 1981 were violated. Complaint, ¶ 6. On the basis of the allegations, it is hard to see how any § 1981 rights are implicated here; that section only bars discrimination in the making or enforce-

ment of private contracts. *Patterson v. McLean Credit Union,* —— U.S. ——, 109 S.Ct. 2363, 2372–74, 105 L.Ed.2d 132 (1989); *Matthews v. Freedman*, 882 F.2d 83, 85 (3d Cir.1989). However, as no counts of the complaint rely upon § 1981, the defendants' correct observation yields them nothing.

id. The alleged superfluity is thus improperly challenged using Rule 12(b)(6). The Rules do permit redundant material to be stricken from the complaint. Fed.R.Civ.P. 12(f). Although a court may strike material on its own initiative, motions to strike are disfavored. *See, e.g., Kinee v. Abraham Lincoln Fed. Sav. & Loan Ass'n*, 365 F.Supp. 975, 982 (E.D.Pa.1973); 2A J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 12.21[2] (2d ed. 1989). Because the parties have not addressed this point fully, and because removing a defendant from an action is an extreme move, I shall not strike the Department on my own motion. However, by this I do not foreclose the governmental defendants from filing a motion to strike later.

■ The second objection is also fruitless. It is true, as the governmental defendants state, that suits against officials in their official capacity are nothing more than actions against the governmental entity of which the individual was an agent. *Brandon v. Holt*, 469 U.S. 464, 471–72, 105 S.Ct. 873, 877–78, 83 L.Ed.2d 878 (1985); *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 2035 n. 55, 56 L.Ed.2d 611 (1978); *Gregory v. Chehi*, 843 F.2d 111, 120 (3d Cir.1988). However, this does not mean that either Wilson or Nace should be dismissed. It would be possible for Wilson to be liable, but for Nace to be liable in only his personal capacity. If so, it would be necessary to keep both in the action; Nace could not serve as proxy for Wilson, nor could Wilson for Nace. Moreover, the formalistic approach urged by the governmental defendants does not correspond to standard § 1983 practice. In *Brandon*, for example, the Court allowed the plaintiff to add the City of Memphis as a defendant, even though its Chief of Police was already a named defendant. 469 U.S. at 471, 105

S.Ct. at 877. Similarly, multiple defendants, whether corporate, municipal, or individual, are commonplace in leading § 1983 cases. *See, e.g., Pembaur v. City of Cincinnati*, 475 U.S. 469, 473–74, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) (city, county, police chief, county sheriff, Board of County Commissioners, prosecutor, police officers); *Kentucky v. Graham*, 473 U.S. 159, 161–62, 105 S.Ct. 3099, 3102–03, 87 L.Ed.2d 114 (1985) (local law enforcement officers and city). This criticism thus also lacks merit.

Finally, the governmental defendants argue that, insofar as the claim operates against Nace in his individual capacity, the complaint is insufficiently specific. This is incorrect. As the summary above shows, paragraph eighteen states that Nace declined to act upon Coffman's complaint. Paragraph twenty-four also alleges that Nace had received a copy of the contempt order. Though no other allegations mention Nace by name, other sections refer to actions taken, or, more often, not taken, by members of the Department. *See, e.g.*, Complaint, ¶¶ 12, 19, 20, 21, 23. The complaint as a whole is thus detailed enough to put the defendants on notice as to the basis for the suit. To the extent that the general allegations about actions taken by Wilson police officers are in fact allegations about Nace, the plaintiff may have the benefit of reasonable discovery to set forth the necessary detail. *See, e.g., Freedman*, 853 F.2d at 1114. The defendants have set forth no valid reasons for dismissing this Count; accordingly, their motion to dismiss it shall be denied.[5]

## B. *Count II*

■ The objections to redundancy and particularity made in Count I are repeated here; they are equally ill-founded. How-

---

5. The defendants did not challenge the legal basis for an Equal Protection Clause claim against them. This was prudent; such a claim is amply supported by precedent. *Hynson v. City of Chester Legal Dep't*, 864 F.2d 1026 (3d Cir.1988); *see also, e.g., Balistreri v. Pacifica Police Dep't*, 897 F.2d 368 (9th Cir.1990) (replacing 855 F.2d 1421 (9th Cir.1988)); *Watson v. City of Kansas City*, 857 F.2d 690 (10th Cir. 1988); *Thurman v. City of Torrington*, 595 F.Supp. 1521 (D.Conn.1984). *See generally* Comment, *Does the Legal System Batter Women? Vindicating Battered Women's Constitutional Rights to Adequate Police Protection*, 21 Ariz. St.L.J. 705, 718–27 (1989); Note, *Battered Women and the Equal Protection Clause: Will the Constitution Help Them When the Police Won't?*, 95 Yale L.J. 788 (1985).

ever, the governmental defendants set forth another basis for dismissal. They argue, without explanation, that the Court's recent decision in *City of Canton v. Harris*, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989), forecloses Coffman's claim that the governmental defendants' failure to train Wilson police officers adequately violated the Equal Protection Clause. This grossly misreads *Harris*. The Court did *not* hold that municipalities could not be held liable under § 1983 for failing to train their employees adequately. Rather, the Court held "that the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." 109 S.Ct. at 1204. Whether Ms. Coffman can demonstrate deliberate indifference is a matter for another day. The plain statement by the Court in *Harris* shows that she has the right to try. The motion to dismiss Count II shall therefore be denied. *Accord Williams v. Borough of West Chester*, 891 F.2d 458, 467 n. 14 (3d Cir.1989) (opinion of Becker, J.); *Simmons v. City of Philadelphia*, 728 F.Supp. 352, 355–57 (E.D.Pa. 1990); *Dudosh v. City of Allentown*, 722 F.Supp. 1233, 1235–36 (E.D.Pa.1989).

### C. *Count III*

The governmental defendants argue that this count, which sets forth a claim that the defendants violated the plaintiff's rights under the Due Process Clause of the Fourteenth Amendment of the United States Constitution, is barred by *DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). This argument must also be rejected.

The defendants are correct when they state that *DeShaney* is germane here. In *DeShaney*, the Court held that the Due

Process Clause is not violated when the state fails to protect an individual against private violence.[6] 109 S.Ct. at 1004. More particularly, the Court rejected the "special relationship" principle espoused by some Courts of Appeal, including ours. 109 S.Ct. at 1004; *see also Estate of Bailey by Oare v. County of York*, 768 F.2d 503, 510–11 (3d Cir.1985) (adopting special relationship test). Although the state normally assumes no affirmative obligation under the Due Process Clause to provide adequate protection, the special relationship doctrine allowed such an obligation to accrue when the state learns that a third party poses a special danger to a particular victim and, in response, indicates that it is willing to protect the victim. *See, e.g., DeShaney*, 109 S.Ct. at 1004 n. 4; *Estate of Bailey*, 768 F.2d at 510; *Dudosh v. City of Allentown*, 665 F.Supp. 381, 389–90 (E.D.Pa.1987). This would seem to have applied here; consequently, if the special relationship doctrine had been the sole source of the plaintiff's Due Process Clause claim, the governmental defendants would be justified in their motion. I thus agree with Judge Katz, who ruled identically in a case presenting the same facts. *Hynson v. City of Chester*, 731 F.Supp. 1236, 1238–39 (E.D.Pa.1990); *see also Balistreri*, 897 F.2d at 371–72 (no special relationship in failure to enforce case after *DeShaney*); *McKee v. City of Rockwall*, 877 F.2d 409, 413 (5th Cir.1989) (same), *cert. denied,* —— U.S. ——, 110 S.Ct. 727, 107 L.Ed.2d 746 (1990); *Dudosh v. City of Allentown*, 722 F.Supp. 1233, 1234–35 (E.D.Pa.1989); Comment, 21 Ariz.St.L.J. at 714–18 (same).

The plaintiff, however, invokes a different source of due process protection. In *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), the Court held that property interests created by state law were protectible by the Due Process Clause.[7] Such interests "are created and their dimensions are defined by exist-

---

**6.** The Court's exception—when a person is *in custodia legis*—does not apply here. *See also Horton v. Flenory*, 889 F.2d 454 (3d Cir.1989) (extending *DeShaney* exception to people injured by private actors in whose hands they were left by public officials acting under official policy).

**7.** The *DeShaney* court specifically did not reach whether a *Roth* entitlement might have existed, so the question remains open. *DeShaney*, 109 S.Ct. at 1003 n. 2.

ing rules or understandings that stem from an independent source such as state law— rules or understandings that secure certain benefits and that support claims of entitlements to those benefits." 408 U.S. at 577, 92 S.Ct. at 2709. Thus, "[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Id.* This court must thus look to Pennsylvania law to determine whether a property right exists. *See, e.g., Bishop v. Wood,* 426 U.S. 341, 345 & n. 7, 96 S.Ct. 2074, 2077 & n. 7, 48 L.Ed.2d 684 (1976); *Clark v. Township of Falls,* 890 F.2d 611, 617 (3d Cir.1989); *Anderson v. City of Philadelphia,* 845 F.2d 1216, 1220 (3d Cir. 1988).

 The most obvious source of state law is the statute book, and the plaintiff maintains that the property interest may be found there. As Judge Katz recently held, though, the Pennsylvania Protection From Abuse Act creates no enforceable interest in police protection. *Hynson,* 731 F.Supp. at 1239–40. Nowhere does it state that the police must protect those who allege that they are abused. The only mention of police duties in the statute sets forth a relaxed standard for arrest when it is alleged that a protective order has been violated; in doing so, it states that the arrest *"may* be without warrant ..." 35 Pa.Stat.Ann. § 10190(c) (Purdon Supp.1990). This language does not itself entitle the plaintiff to police protection. I therefore agree with Judge Katz that the statute itself creates no property interest protected by *Roth.*

However, there are other sources of law than statutes. In particular, a court order may create a property right. If it did not, much of the work of this, or any other court, would be nugatory; civil disputes are referred to courts precisely because the court can issue an order that compels one person to hand property to another (or tells that person that the claims are meritless).

It is clear that a court may issue a protective order under the Protection From Abuse Act. 35 Pa.Stat.Ann. § 10186 (Purdon Supp.1990). Moreover, this order must be issued to the police department that has jurisdiction to enforce it. 35 Pa.Stat.Ann. § 10187 (Purdon Supp.1990). As the complaint reflects, the orders that were issued by the courts and served upon the Department state that the appropriate police department *shall* enforce the orders. Complaint, ¶¶ 12, 16, Exhs. B & D. The question thus becomes whether the orders of court create a property interest in police enforcement that is cognizable under *Roth.*[8]

I hold that they do. *Roth* requires that the plaintiff show "a legitimate claim of entitlement." *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709; *Anderson,* 845 F.2d at 1220. An order of court, served upon the Department, that states that the Department shall enforce the order is unambiguous. The word "shall" is mandatory, not precatory, and its use in a simple declarative sentence brooks no contrary interpretation. Although, in the context of *Roth,* property interests generally arise from sources other than judicial orders, it is in no way remarkable that an order could create an entitlement. After all, courts have held that employment contracts can create property interests removable only by due process of law. *See, e.g., Perry v. Sindermann,* 408 U.S. 593, 601–03, 92 S.Ct. 2694, 2699–700, 33 L.Ed.2d 570 (1972). Courts are more clearly sources of state law than are middle-ranking functionaries in a college employment office. Furthermore, the court derived its power to issue orders from the legislature. Although the legislature did not itself grant a protectible interest, it enabled the court to create one (just as the legislature may not have created an interest in continued employment by a state employee, but may have empowered a state actor to create such an interest by issuing an employment contract).

---

**8.** In contrast, there were no valid orders in the case before Judge Katz. *Hynson,* 731 F.Supp. at 1237–38.

■ This conclusion is buttressed by Pennsylvania decisions on the scope of the duty of a police force to protect individuals. In general, Pennsylvania courts have ruled that the duty to protect is owed by a municipality to the citizenry as a whole, rather than to any individual. As a result, a person who has been injured by one who violates the law generally may not sue the police department in the jurisdiction in which the act occurred for breaching its duty to protect. *See, e.g., Chevalier v. City of Philadelphia,* 516 Pa. 316, 319, 532 A.2d 411, 413 (1987); *Morris v. Musser,* 84 Pa.Cmwlth. 170, 173–75, 478 A.2d 937, 939–40 (1984). However, the Pennsylvania courts, following most other jurisdictions, have also recognized that a duty to protect an individual may at times arise, creating a special relationship between the police department and the individual.[9] Thus, for example, a police officer who passes a disabled vehicle stranded on a median has breached a duty to stop and investigate where a departmental directive requires that officers render assistance to stranded motorists. *Socarras v. City of Philadelphia,* 123 Pa.Cmwlth. 197, 199–201, 552 A.2d 1171, 1172–73, *appeal denied,* 522 Pa. 608, 562 A.2d 829 (1989).

■ No Pennsylvania court has decided whether a protective order creates a special relationship. This court believes that a Pennsylvania court would hold that such an order does so. First, the general requirements of the special relationship doctrine are met here. As the Pennsylvania Supreme Court has held, a special relationship exists when the police possess statutory authority to regulate a hazardous situation, have knowledge of the situation, and have the ability to rectify the problem. *Mindala v. American Motors Corp.,* 518 Pa. 350,

363, 543 A.2d 520, 527 (1988); *see also Socarras,* 123 Pa.Cmwlth. at 200–201, 552 A.2d at 1173. These three criteria are met. The police had the authority to arrest or detain Barber; they had knowledge of the protective order; and they were allegedly able to make arrests. Second, courts in states that recognize the special relationship doctrine have uniformly held that protective orders create special relationships. *See, e.g., Baker v. City of New York,* 25 A.D.2d 770, 269 N.Y.S.2d 515 (1966); *Nearing v. Weaver,* 295 Or. 702, 670 P.2d 137 (1983). I conclude that a Pennsylvania court would find that a special relationship can exist as a result of a properly-served protective order.[10]

It thus appears that Pennsylvania courts would recognize the presence of a duty to provide some sort of police protection in cases like this, as a matter of state law.[11] Although this state-law doctrine does not create a substantive due process right *per se,* it reinforces the conclusion that the order of court, properly served upon the Department, created a *Roth* property interest that could only be removed through due process of law (here, presumably a hearing on a motion to vacate the protective order).

The property right protected is also definite enough to warrant protection. *See, e.g., Doe v. Hennepin County,* 858 F.2d 1325, 1328–29 (8th Cir.1988) (interest in provision of social services insufficiently definite), *cert. denied,* — U.S. —, 109 S.Ct. 3161, 104 L.Ed.2d 1023 (1989). Here, the right is not to immediate and unthinking obedience to every request for assistance. Rather, it is the right to reasonable police response. As Judge Posner put it in a similar case, "[t]he only entitlement here is an entitlement to place before the dis-

9. It is important to stress that the state-law version of the special relationship is not the same as the substantive-due-process version rejected in *DeShaney. See Dudosh v. City of Allentown,* 665 F.Supp. 381, 388 n. 1 (E.D.Pa.1987). Here, the special relationship does not itself have constitutional dimensions. At most, a special relationship under state law could create a property interest that could only be removed through due process of law, as *Roth* held. It does not necessarily do so.

10. Under this doctrine, of course, a duty may not always attach merely because a protective order exists, or even when one has been served upon the police department. If a police department lacks "the capability to rectify the problem," for example, the test would not be met. *Mindala,* 518 Pa. at 363, 543 A.2d at 527.

11. Such claims, incidentally, would not appear to be barred by governmental immunity.

patcher information which if true would require him to conclude that there was an emergency and therefore send [a police car]." *Archie v. City of Racine,* 847 F.2d 1211, 1226 (7th Cir.1988) (en banc) (Posner, J., concurring), *cert. denied,* — U.S. —, 109 S.Ct. 1338, 103 L.Ed.2d 809 (1989). The plaintiff's property right is to reasoned police response; if the Department failed to dispatch a vehicle because other calls had greater importance, then her interest, though not her wish, has been fulfilled. There is, of course, a great deal of discretion in police work, and so the property right here is not reducible to a sum certain. But this is true of most property rights; a right to hold a job, for example, carries with it the qualifications that one may be fired for cause, or if financial straits require it, or for any of a number of other justifications. The well-developed body of case law and practice that governs proper police response makes the scope of this property interest certain enough to be protectible.

It must be stressed that this is not a litigant's bonanza. The *Roth* interest does not even extend to all of those few cases in which a special relationship may attach. Moreover, the scope of the interest is limited. As noted above, Coffman did not acquire an absolute right to have the police force act at her bidding when the court signed the order. Finally, even if the Department deprived her of her property right, their deprivation may not have caused the injuries in question here. Whatever the ultimate merits of this claim may be, though, it cannot be said as a matter of law that the claim must be dismissed. This court shall not dismiss Count III.

### D. *Count IV*

■ Here the plaintiff asserts claims arising from Article I, Sections 1, 8, and 26 of the Constitution of the Commonwealth of Pennsylvania.[12] The governmental defendants argue that these claims are barred by the Pennsylvania Political Subdivision Tort Claims Act, 42 Pa. Cons.Stat. Ann. §§ 8541–8564 (Purdon 1982). The defendants are wrong.

Their error stems from the limited scope of the statute granting partial immunity to municipalities. As the title of the statute indicates, the immunity granted covers only torts (and, at that, only claims sounding in negligence). 42 Pa. Cons.Stat.Ann. §§ 8541–42, 8550 (Purdon 1982); *see also, e.g., Mascaro v. Youth Study Center,* 514 Pa. 351, 355, 523 A.2d 1118, 1120 (1987). Claims arising from violations of the Pennsylvania Constitution may still be raised against local governments. *See, e.g., Redevelopment Auth. v. Woodring,* 498 Pa. 180, 183, 445 A.2d 724, 726 (1982) (takings; Pa. Const. art. I, § 10); *Thelin v. Borough of Warren,* 118 Pa.Cmwlth. 336, 338, 544 A.2d 1135, 1136 (1988) (impairment of contract; Pa. Const. art. I, § 17); *Williams v. City of Pittsburgh,* 109 Pa.Cmwlth. 168, 179, 531 A.2d 42, 47 (1987) (equal protection; Pa. Const. art. I, § 1), *appeal denied,* 518 Pa. 622, 541 A.2d 748 (1988); *Holland Enters., Inc. v. Joka,* 64 Pa.Cmwlth. 129, 136, 439 A.2d 876, 881 (1982) (due process; Pa. Const. art. I, § 1). This result is logical; it would be peculiar if the legislature could abrogate rights protected by the Constitution. As a result, I shall deny the governmental defendants' motion to dismiss Count IV.

### E. *Count V*

■ The governmental defendants seek to have this count dismissed because 42 U.S.C. § 1988 does not set forth an independent cause of action. The latter proposition is correct. However, it does not follow that this count must be dismissed. Because the plaintiff sets forth counts alleging violations of § 1983, she would, if she prevailed, be eligible for reasonable fees under § 1988. To be sure, it would have been cleaner *for* Ms. Coffman to request attorney's fees and costs pursuant to

---

12. Although it was not pleaded, Article I, Section 28 of the Pennsylvania Constitution, the Pennsylvania Equal Rights Amendment, would also seem to create a cause of action. *See, e.g., Hartford Accident and Indem. Co. v. Insurance Comm'r,* 505 Pa. 571, 583, 482 A.2d 542, 549 (1984); *Bartholomew v. Foster,* 115 Pa.Cmwlth. 430, 435–40, 541 A.2d 393, 395–97 (1988); *aff'd by an equally divided court,* 522 Pa. 489, 563 A.2d 1390 (1989).

§ 1988 in the relevant *ad damnum* clauses of her complaint, and she may wish to do so if she amends her complaint. As her complaint stands, though, it is not fatally infirm. The motion to dismiss Count V shall be denied.

### F. *Counts VI and VII*

 Here the governmental defendants argue that this court lacks jurisdiction over Meridian, because diversity is incomplete and the claims rest entirely upon state law. The plaintiff responds by stating that the governmental defendants lack standing to assert Meridian's jurisdictional defenses. In this the plaintiff is correct. As the Court has put it, "a litigant must normally assert his own legal interests rather than those of third parties." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 804, 105 S.Ct. 2965, 2970, 86 L.Ed.2d 628 (1985); *see also, e.g., Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 474, 102 S.Ct. 752, 759, 70 L.Ed.2d 700 (1982); *United States v. Municipal Bond and Collection Servs., Inc.*, 810 F.2d 46, 49 (3d Cir.1987). The governmental defendants would not vindicate their own interests were they to prevail here, and Meridian is presumably quite capable of defending itself. *Secretary of State of Maryland v. Joseph H. Munson Co.*, 467 U.S. 947, 955–56, 104 S.Ct. 2839, 2846–47, 81 L.Ed.2d 786 (1984). This court thus declines to hear the governmental defendants on this issue.

However, this court is obliged to question its own jurisdiction, and so I shall do so *sua sponte. See, e.g., Carlsberg Resources Corp. v. Cambria Sav. and Loan Ass'n*, 554 F.2d 1254, 1256 (3d Cir.1977); *Essington Metal Works, Inc. v. Retirement Plans of Am., Inc.*, 609 F.Supp. 1546, 1550 (E.D.Pa.1985). The claims against Meridian rest entirely upon state law.[13] Since Coffman and Meridian are non-diverse, there is no independent basis for this court to assert jurisdiction over Meridian. Consequently, this court may keep Meridi-

an in this action only if it asserts pendent-party jurisdiction.

This jurisdictional path has been barred for some time. In *Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976), the Court declined to allow the plaintiff to append state law claims against a nondiverse defendant to a § 1983 action. It held that the relevant jurisdictional statute, 28 U.S.C. § 1343, allowed suit only against parties against which federal civil rights statutes authorized suit. 427 U.S. at 17, 96 S.Ct. at 2421. Because § 1983 excluded liability for the putative defendant in *Aldinger*, its jurisdictional correlate excluded jurisdiction. 427 U.S. at 17, 96 S.Ct. at 2421. *Accord Finley v. United States*, — U.S. ——, 109 S.Ct. 2003, 2010, 104 L.Ed.2d 593 (1989). The Court observed that "the addition of a completely new party would run counter to the well-established principle that federal courts, as opposed to state trial courts of general jurisdiction, are courts of limited jurisdiction marked out by Congress." 427 U.S. at 15, 96 S.Ct. at 2420.

 As in *Aldinger*, this court has before it a § 1983 action with state law claims asserted against a non-diverse pendent party. Because this court's jurisdictional grant is limited, it ought not reach out to embrace new parties. Furthermore, the rationale that courts may, at times, allow pendent-party jurisdiction to avoid piecemeal litigation is not present here. *Aldinger*, 427 U.S. at 18, 96 S.Ct. at 2422; *Lovell Mfg. v. Export–Import Bank*, 843 F.2d 725, 732 (3d Cir.1988). State courts have concurrent jurisdiction over § 1983 actions, though the Court has left unresolved whether they must accept them. *Maine v. Thiboutot*, 448 U.S. 1, 2 n. 1, 100 S.Ct. 2502, 2503 n. 1, 65 L.Ed.2d 555 (1980); *Martinez v. California*, 444 U.S. 277, 283 n. 7, 100 S.Ct. 553, 558 n. 7, 62 L.Ed.2d 481 (1980). The Pennsylvania courts routinely entertain § 1983 suits. *See, e.g., Fawber v. Cohen*, 516 Pa. 352, 532 A.2d 429 (1987); *Balshy v. Rank*, 507 Pa. 384, 490 A.2d 415

---

**13.** There are no allegations that would support terming Meridian a state actor for the purposes of 42 U.S.C. § 1983. *Burton v. Wilmington*

*Parking Auth.*, 365 U.S. 715, 724–25, 81 S.Ct. 856, 861–62, 6 L.Ed.2d 45 (1961).

(1985). There is thus nothing that would prevent the plaintiff from consolidating the actions against Meridian and against the governmental defendants in one forum. Whether she does so is her choice. This court, however, shall dismiss Meridian from this action on the ground that it lacks subject matter jurisdiction.[14]

### III. CONCLUSION

The complaint thus withstands the governmental defendants' attack. However, this court's duty to examine its own jurisdiction leads it to dismiss Meridian Bancorp from this suit.

---

**14.** This court thus expresses no opinion on the merits of the plaintiff's claims against Meridian. The plaintiff should note that these claims could be brought in state court, and that the interests of economy might warrant voluntarily dismissing this action and refiling it with an action against Meridian.