John P. CAPRESECCO, Plaintiff,

v.

**JENKINTOWN BOROUGH, et al., Defendants.**

**Civil Action No. 02–7880.**

United States District Court, E.D. Pennsylvania.

May 9, 2003.

Kimberly H. Ashbach, Ambler, PA, for Plaintiff.

John P. Gonzales, Marshall Dennehey Warner Coleman & Goggin, Norristown, PA, for Defendants.

## MEMORANDUM OPINION

RUFE, District Judge.

In this case a former police officer for the Borough of Jenkintown, Pennsylvania alleges that he was wrongfully terminated in violation of his constitutional right to due process, in breach of a collective bargaining agreement, and in violation of state common law. Currently before the Court is Defendants' Partial Motion to Dismiss for failure to state a claim. For the reasons set out below, Defendants' motion is granted in part and denied in part.

## I. BACKGROUND [1]

Plaintiff is John P. Capresecco, a former police officer employed by the Borough of Jenkintown, Pennsylvania from June 1978 until August 2002. Defendants are the Borough of Jenkintown (the "Borough"); Edwin Geissler, the Borough Manager; Craig Rickard, the Borough's former police chief; Charles Whitney,[2] a member of

1. In ruling on a motion to dismiss for failure to state a claim upon which relief may be granted, the Court must accept as true all well-pleaded allegations of fact in the plaintiff's complaint, and any reasonable inferences that may be drawn therefrom, and must determine whether "under any reasonable reading of the pleadings, the plaintiff may be entitled to relief." *Nami v. Fauver,* 82 F.3d 63, 65 (3d Cir.1996). Claims should be dismissed under Rule 12(b)(6) only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Accordingly, all facts set forth herein are gleaned from the Amended Complaint.

2. The docket does not reflect service of process upon Mr. Whitney. Accordingly, the Court has no jurisdiction over him, and to-

the Borough Council; and Jane and John Doe, unidentified members of the Borough Council.

On July 2, 2001, Plaintiff went on sick leave with multiple illnesses, including parathyroid cancer, for which he underwent two surgeries. At all times he kept the Borough and the Police Department advised of his illness, and his intent to return to work as his illness permitted. Specifically, Plaintiff notified Defendants Rickard and Geissler of the seriousness of his illness, and his need for continued medical care and treatment.

On January 4, 2002, Defendant Geissler sent a letter to Plaintiff advising him that he had 373.5 hours of sick leave remaining. Plaintiff disputed this calculation, and asked Geissler in two written requests to recalculate his 2001 leave time. Plaintiff received no response to his requests.

On March 14, 2002, Defendant Rickard sent a letter to Plaintiff terminating him from his position with the Borough police department, and notifying him that his medical benefits would end as of March 31, 2002. Plaintiff alleges that Geissler, Whitney, and Rickard, along with the Jane and John Doe members of the Borough Council, conspired to wrongfully terminate Plaintiff, and that his termination was executed without the required pretermination hearing, and without any written explanation.

The termination left Plaintiff with no personal income or medical benefits at a time when he was seriously ill. Plaintiff appealed his termination to the Jenkintown Civil Service Commission, which concluded that Plaintiff was wrongfully terminated, and ordered him reinstated on July 24, 2002. Despite the reinstatement order,

the Borough and Geissler initially refused to honor the reinstatement, and refused to allow Plaintiff to return to work until August 2, 2002.

On his first day back at work, Plaintiff notified Chief of Police Albert Valentino (who is not a party to this suit) that he intended to take early retirement from the Police Department. Plaintiff alleges, among other things, that Defendants have delayed processing his repeated requests for a calculation of the benefits due to him; refused his demands for payment of his remaining sick leave, vacation, holiday, and other benefits for 2001 and 2002; and delayed processing of his early retirement until October 11, 2002. Plaintiff ascribes to Defendants an ill motive, and contends they acted willfully while knowing their actions made him unable to seek medical care at a time he suffered from a terminal illness.

Plaintiff initiated this action on October 15, 2002, and with consent of Defendants filed an Amended Complaint on March 7, 2003. In his Amended Complaint he alleges violations of his constitutional right to procedural due process via 42 U.S.C. § 1983 (Count 1); intentional infliction of emotional distress (Count 2); and breach of a collective bargaining agreement in violation of the Labor Management Relations Act of 1947 (Count 3). Thereafter Defendants filed their Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(6), although the Court notes that Defendants' Motion is in the nature of a Partial Motion to Dismiss, because they only attack portions of Plaintiff's claims. The Court's jurisdiction is premised on a federal question and its

day's decision does not apply to him. *Ayres v. Jacobs & Crumplar, P.A.,* 99 F.3d 565, 570 (3d Cir.1996) (holding that "a summons when properly issued is not effective in conferring

personal jurisdiction upon ... an individual if it is not served in accordance with Rule 4....").

pendent jurisdiction to hear state law claims. 28 U.S.C. §§ 1331, 1343, 1367.

## II. *DISCUSSION*

■ Defendants first contend that Plaintiff's § 1983 claims against Rickard, Geissler, Whitney, and Jane and John Doe in their official capacities should be dismissed. The Amended Complaint names Rickard and Geissler in both their individual and official capacities, but names Whitney and the Does in their official capacities only. Defendants correctly point out that a claim against an individual in her official capacity is functionally the same as a claim against the local government entity. Therefore, they argue, the official capacity claims merge with the claims against the local agency, making the official capacity suits against the individuals redundant. This redundancy, Defendants contend, justifies dismissing Plaintiff's official capacity claims. *See Kentucky v. Graham,* 473 U.S. 159, 166 n. 14, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) ("There is no longer a need to bring official-capacity actions against local government officials, for under *Monell [v. New York City Dep't of Social Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)], local government units can be sued directly...."); *Brandon v. Holt,* 469 U.S. 464, 471, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985) ("a judgment against a public servant 'in his official capacity' imposes liability on the entity that he represents"). Although Defendants' argument has some allure, nothing in Supreme Court or Third Circuit precedent compels such an approach.

In response, Plaintiff directs the Court to a decision from this district, *Coffman v. Wilson Police Dep't,* 739 F.Supp. 257 (E.D.Pa.1990) (Cahn, J.). There, the court rejected the argument advanced here by Defendants:

It is true, as the governmental defendants state, that suits against officials in their official capacity are nothing more than actions against the governmental entity of which the individual was an agent. However, this does not mean that either [the borough] or [the borough official] should be dismissed. It would be possible for [the borough] to be liable, but for [the borough official] to be liable only in his personal capacity. If so, it would be necessary to keep both in the action; [the borough official] could not serve as a proxy for [the borough], nor could [the borough] for [the borough official].

*Id.* at 262 (internal citations omitted). The Court finds the *Coffman* court's approach advisable.

Here, both Rickard and Geissler also must answer charges against them in their individual capacities, and so dismissing the official capacity claims against them will serve no laudable purpose. Defendants do not argue that the allegations against Rickard and Geissler fail to state a cognizable claim under § 1983; rather, they merely contend that such claims are redundant. This is not a persuasive basis for dismissal under Rule 12(b)(6). *See id.* at 261–262 ("[A] Rule 12(b)(6) motion does not address the redundancy of claims; it questions only their validity. Redundant claims may all be valid.").

The Court also agrees with the *Coffman* court's observation that this "formalistic approach ... does not correspond to standard § 1983 practice....[M]ultiple defendants, whether corporate, municipal, or individual, are commonplace in leading § 1983 actions." *Id.* at 262 (citing *Pembaur v. City of Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) and *Graham,* 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114). Finally, as to Defendants Whitney and Jane and John Doe, they are

not presently subject to this Court's jurisdiction, and thus the Court need not address them. *See supra* note 2. Accordingly, Defendant's motion is denied as to Count 1.

Second, Defendants seek dismissal of Plaintiff's count for intentional infliction of emotional distress ("IIED") because the alleged misconduct does not rise to the level of outrageousness required under relevant precedent. Although not specifically recognized as a cognizable tort by the Pennsylvania Supreme Court, *see Taylor v. Albert Einstein Medical Center*, 562 Pa. 176, 754 A.2d 650, 652 (2000), the Third Circuit has noted that Pennsylvania courts have "signaled their acceptance of this evolving tort," and that it may be applied as part of Pennsylvania common law. *Williams v. Guzzardi*, 875 F.2d 46, 50 (3d Cir.1989); *see also Britt v. Chestnut Hill College*, 429 Pa.Super. 263, 632 A.2d 557, 561 (1993) (setting out legal standard for IIED).

▮ To make out a claim for IIED, the following standard is applicable: "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm results from it, for such bodily harm." *Id.* (quoting *Restatement (Second) of Torts*, § 46(1)). The conduct alleged must be of an "extreme and outrageous type," which is a legal question for the Court to decide. *Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir.1988) (citation omitted). In order to meet this high standard, "[t]he conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Id.* (citation omitted).

▮ Here, Plaintiff alleges that Defendants conspired to deprive Plaintiff of his job while he was on sick leave; that they did so despite evidence to the contrary that Plaintiff had additional sick time available; that they did so knowing it would effectively deprive Plaintiff of medical care during a serious illness; that they knowingly deprived Plaintiff of his opportunity to a hearing before terminating him; and that Defendants have in the past and today continue to interfere with the processing of Plaintiff's benefits. Although the conduct as alleged by Plaintiff, if true, is reprehensible, it does not rise to the requisite level of outrageousness.

The Third Circuit has noted that "it is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for [IIED]." *Id.; Matczak v. Frankford Candy and Chocolate Co.*, 136 F.3d 933, 940 (3d Cir.1997) (same, quoting *Cox* ). In fact, the *Cox* court addressed specifically the issue of IIED arising from a termination of employment, and noted that "while loss of employment is unfortunate and unquestionably causes hardship, often severe, it is a common event and cannot provide a basis for recovery for [IIED]." 861 F.2d at 395 (internal quotes and citation omitted). Even where an employer deceives an employee into foregoing other employment, or even where the employer engages in a "premeditated plan" to force an employee to resign, IIED will not lie. *Id.* (citations omitted). Finally, the Third Circuit has also noted that "the only instances in which courts applying Pennsylvania law have found conduct outrageous in the employment context is where an employer engaged in both sexual harassment and other retaliatory behavior against an employee." *Id.* Although the *Cox* court made that observation nearly fifteen years ago, this is still the state of the law. *See, e.g., Fleming v. Kramont Employer Royce Realty, Inc.*,

No. Civ.A.02–2703, 2002 WL 1964257, at *4 (E.D.Pa. Aug. 16, 2002) (Baylson, J.); *Hoy v. Angelone,* 456 Pa.Super. 596, 691 A.2d 476, 483 (1997).

Plaintiff's allegations lack these essential characteristics. Arising as it does from allegations of an unlawful termination, and being unrelated to sexual harassment and subsequent retaliation, the Amended Complaint is simply outside the universe of cognizable IIED claims. Accordingly, Count 2 of the complaint is dismissed for failure to state a claim. *See Cox,* 861 F.2d at 395–96 (allegations do not rise to requisite level of outrageousness where employer "dismissed Cox with an improper motive and notwithstanding potential effects on Cox," including "endangering his chances of collecting medical and disability benefits" and "jeopardizing his chances to obtain alternate employment"); *Duffy v. SEPTA,* No. Civ.A.94–4260, 1995 WL 299032, at *4–5 (E.D.Pa. May 12, 1995) (Pollak, J.) (finding conduct not outrageous where employer denied to plaintiff light duty assignments, removed her from her work squad, and failed to invite her to certain training-critique sessions); *Alexander v. Hargrove,* No. Civ.93–5510, 1994 WL 313059, at *6–7 (E.D.Pa. June 28, 1994) (Yohn, J.) (finding conduct not outrageous where employer "coerced [plaintiff's] termination while knowing that this would attach a stigma of wrongdoing to him that would make him unemployable and destroy his career, family and health").

An appropriate Order follows.

### ORDER

**AND NOW,** this 9th day of May, 2003, upon consideration of Defendants' Motion to Dismiss [Doc. # 8], Plaintiff's Opposition thereto [Doc. # 9], and for the reasons set forth in the attached Memorandum Opinion, it is hereby **ORDERED** that De-

fendants' Motion is **GRANTED IN PART** and **DENIED IN PART** accordingly:

1. The Motion is **GRANTED** as to Count 2 of the Amended Complaint, and Count 2 is hereby **DISMISSED;**

2. The Motion is **DENIED** as to Count 1 of the Amended Complaint;

3. Defendants shall file an Answer to Count 1 and Count 3 of the Amended Complaint within twenty (20) days of the date of this Order.

It is so **ORDERED.**